UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| SHELBY HENSLEY and KYLE BAILEY, ) <br> Individually and By Next Friend ARTHUR ) <br> BAILEY, Jointly and Individually, Next of ) <br> Kin of Ted Lee Bailey ) <br> ) <br> v. ) <br> ) <br> DENNIS E. RECTOR, Individually and ) <br> Jointly, Group, Limited, and/or Hayes & ) <br> Lunceford Electric Motor Repair, Inc. ) | No. 2:03-CV-343 <br> *Magistrate Judge Inman* |

MEMORANDUM AND ORDER

The defendants have moved for summary judgment [Doc. 19].

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Further, the non-moving party must be indulged with all possible favorable inferences from the facts. *Plott v. Gen. Motors Corp.*, 71 F.3d 1190 (6th Cir. 1995).

The essential facts in this case are undisputed; the only question is, are there any inferences which *reasonably* can be drawn from these facts which would be favorable to the plaintiffs and preclude summary judgment?

This is a wrongful death action; plaintiff's decedent, Mr. Ted Bailey, was struck and killed by a truck driven by the defendant, Dennis Rector. On August 21, 2002,

Mr. Bailey was a passenger in a vehicle driven by his cousin, Mr. Paul Engle. Engle was driving southward on Interstate 26 in or very near Johnson City. According to Mr. Engle's pretrial deposition, his car overheated and the engine stopped, forcing Mr. Engle to coast onto the right shoulder of I-26. They sat in the car for a time, but ultimately Mr. Bailey decided he could walk to a nearby business and get some water to put in the car. When Mr. Bailey left Engle's car, he was walking in the grass to the side of the roadway, which was the last time that Mr. Engle observed Mr. Bailey. Engle picked up a newspaper and began reading it until cars began pulling over nearby. An acquaintance of Engle ran up to his car and told him that "Ted has been hit and it's real bad," prompting Engle to get out of his car and run over to the place in the roadway where Mr. Bailey then lay. In other words, Mr. Engle only knows that Mr. Bailey got out of his car for the avowed purpose of walking to a nearby business establishment to get water for Engle's overheated car; he knows nothing else about the accident.

At the same time and place, Dennis Rector was driving a truck in the right or outside southbound lane of I-26 and, according to Rector's affidavit and deposition, he was driving at the posted speed limit of sixty-five miles per hour. Rector observed the Engle vehicle on the shoulder of the interstate, and a pedestrian walking southwardly on the shoulder of the interstate several hundred feet from the Engle vehicle. Rector moved into the left lane of the interstate. As Rector approached the pedestrian, now

2

Case 2:03-cv-00343   Document 59   Filed 11/17/05   Page 2 of 8   PageID #: 23

known to be Mr. Bailey, Mr. Bailey stumbled, as a result of which Rector tooted his horn. Bailey turned back to the right, but then suddenly reversed course and began running across the interstate.[1] Rector kept moving to the left until he was in the median grass. Bailey kept running in the same direction[2]; during this entire time, Rector was applying his brakes and blowing the horn.[3] The mirror on the right side of Mr. Rector's truck struck Mr. Bailey, ultimately causing Bailey's death.

    Jeannie Greene was driving her vehicle behind Mr. Rector's truck in the right lane.[4] In her deposition, she testified that she saw Mr. Bailey standing on the right shoulder of the interstate and "all of a sudden the man just jumped out in front of the truck . . . [,] we both swerved to the left . . . [,] I put on my brakes and he had his on, and the guy just kept running towards the truck . . . [,] I thought 'just stop, you know, and he's not going to hit you,' you know, like that . . . [,] [b]ut the mirror and the side hit the guy . . . ."[5] Greene further testified that both she and Rector were proceeding at sixty-five miles per hour.[6] Both Greene and Rector were in the right-hand lane when Mr. Rector "just started out in front of him," and Mr. Bailey gave no indication that he

---

[1] Rector's deposition, p. 31.

[2] Rector's deposition, p. 32.

[3] Rector's deposition, p. 34.

[4] Greene's deposition, p. 10.

[5] Greene's deposition, p. 7, line 17.

[6] Greene's deposition, p. 9.

3

Case 2:03-cv-00343   Document 59   Filed 11/17/05   Page 3 of 8   PageID #: 24

was going to walk out into the traveled lane of the interstate.[7] When Mr. Bailey walked into the right lane of the interstate, Rector slammed on his brakes and started swerving into the left lane, as did Ms. Greene.[8] Mr. Bailey was at first just standing at the side of the interstate, and "then all of a sudden he just jumps out there and starts running . . . as hard as he could go."[9]

There was yet another witness to this tragic accident, Mr. Adam Plauszta, who was driving a tractor-trailer truck. Mr. Plauszta testified during his deposition that he was proceeding at approximately fifty-five miles per hour and was passed by the Rector vehicle. Although Plauszta could see the pedestrian at the edge of the interstate, Mr. Rector could not do so until he completed his passing maneuver around Plauszta's tractor-trailer rig. When Rector had completed his passing maneuver to the extent he could see Mr. Bailey, he was only one hundred to one hundred fifty feet away from the pedestrian. After Rector passed the tractor-trailer truck, Plauszta saw Rector's brake lights come on and, at the same time, saw the pedestrian out in the interstate lanes of travel.[10] Plauszta testified that, in his opinion, there was nothing that Rector could have done to avoid the accident: "He [Bailey] was – he was – he was too close to the – he

---

[7]Greene's deposition, p. 10.

[8]Greene's deposition, p. 10.

[9]Greene's deposition, p. 11.

[10]Plauszta's deposition, p. 45.

4

was too close to the – to the pedestrian there. And the only thing, I mean, avoiding is just kinda getting away from him, but at the same time he was just – the man kept walking – basically running toward the pickup truck, so I – there was – I mean, in my opinion, there was no way out."[11] Although Mr. Bailey started from the right shoulder of the interstate, the impact occurred in the inside or left lane of the interstate.[12]

Mr. Bailey smelled of alcohol[13]; a blood test was performed on Mr. Bailey at the hospital which revealed a blood-alcohol content in excess of 0.1%.[14]

Obviously, the plaintiffs badly are in need of some proof of negligence on the part of Mr. Rector. None of the eyewitnesses to the accident supply such proof. The plaintiffs retained the services of an accident reconstruction expert, Mr. Dale Farmer, who offered to testify that in his opinion Mr. Rector could have avoided this accident by swerving to the right rather than to the left. The Court previously has disallowed Mr. Farmer's proffered testimony simply because it admittedly was an opinion based solely on hindsight.

Plaintiffs argue that the testimonies of the eyewitnesses and Mr. Rector are unreliable and therefore summary judgment is improper. There are discrepancies, to

---

[11] Plauszta's deposition, p. 14.

[12] Plauszta's deposition, p. 11.

[13] Trooper Lunceford's deposition, p. 10.

[14] Lunceford's deposition, p. 22.

5

be sure. Ms. Greene was unsure of the color of Mr. Rector's truck; whereas Mr. Rector testified that he moved into the left lane when he saw Bailey walking along the right edge of the roadway, Ms. Greene testified that Mr. Rector drove continuously in the right lane until Mr. Bailey walked out into that lane, at which time Mr. Rector swerved to the left; whereas Mr. Rector testified that he saw Mr. Bailey stumble and then turn back to the right side of the interstate, Ms. Greene stated that Bailey was standing at the edge of the road when he suddenly moved out into the right lane; Ms. Greene was unaware of any other vehicles in the area, although Mr. Plauszta testified that he was in a tractor-trailer truck in the immediate vicinity; Plauszta testified that he was behind Rector's truck, whereas Greene testified that she was immediately behind Rector; Plauszta testified that he was passed by Mr. Rector's truck, which does not correlate with either Rector's or Greene's testimony; Greene testified that Bailey was struck by the right side and mirror of Rector's truck, whereas Plauszta testified that Bailey was struck by the right front corner of Rector's truck. But these discrepancies fall far short of what would be necessary to utterly disregard the testimony of these witnesses.

Reasonable minds could not disagree about where the fault of this accident lies; the fault solely was that of Mr. Bailey. Firstly, he was a pedestrian on an interstate highway, an illegal act in and of itself. Secondly, he attempted to traverse the traveled lanes of the interstate, not only an illegal act but grossly negligent. Thirdly, although

6

there are discrepancies in the accounts of the eyewitnesses, these discrepancies are minor and ultimately of no significance; in a sudden emergency, people focus on some things, and barely notice others. But they all agree on the basic facts: Mr. Bailey was standing off the interstate to the right, on the shoulder; Mr. Rector was driving at the posted speed limit; Mr. Bailey stepped or ran out into the highway, causing Mr. Rector to apply his brakes and swerve to the left; for reasons no one will ever know, Mr. Bailey continued to run across the interstate on a path that finally intersected with Rector's vehicle, notwithstanding Rector's evasive maneuvers.

In Tennessee, a driver of a vehicle must exercise due care to avoid colliding with any pedestrian upon the roadway, even if that pedestrian is there illegally. *See,* Tenn. Code Ann. § 55-8-136, and TENNESSEE PATTERN JURY INSTRUCTIONS, CIVIL, 5.21. Nevertheless, there must be *some* evidence from which the jury can find that Mr. Rector did not exercise due care to avoid colliding with Mr. Bailey, and there simply is no such evidence. For the jury to return a verdict for the plaintiffs and against Rector, not only would the jury be required to entirely ignore the testimony of Mr. Rector and the two independent eyewitnesses, the jury also would be required to manufacture evidence of some negligent act on the part of Mr. Rector since there is no witness or physical fact that remotely suggests that he was guilty of any negligence. Stated another way, even if the testimony of the eyewitnesses is ignored, and even if Rector's testimony is ignored, plaintiffs still must have evidence of Rector's negligence; this is

not a *res ipsa loquitur* case. There must be at least a modicum of evidence to support a jury verdict for the plaintiffs, and there is none.

The defendants' Motion for Summary Judgment is GRANTED, and plaintiffs' suit is DISMISSED.

SO ORDERED:

                s/ Dennis H. Inman
                United States Magistrate Judge